COMMERCIAL UNION ASSURANCE COMPANY, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 109903, 112303. Promulgated May 26, 1943.

*Edward S. Coons, Jr., Esq.*, for the petitioner.
*Henry C. Clark, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* These cases, duly consolidated, involve deficiencies determined in income taxes and alleged overpayments claimed as follows:

| Year | Docket No. | Income tax deficiency | Overpayment claimed |
|---|---|---|---|
| 1938 | 109903 | $10,580.87 | $31,505.73 |
| 1939 | 112303 | 20,976.59 | 8,534.95 |

The questions presented (identical as to each year) involve the deductibility by a foreign insurance company of business expenses, interest paid, and income taxes paid to a foreign country. The facts were stipulated in writing, a separate stipulation being filed for each of the taxable years. They are, however, identical, except for the figures contained. In material part the stipulation for the year 1938 (and for 1939, except for the use of different figures) is as follows:

I.

The petitioner is a foreign corporation, organized and existing under the laws of Great Britain. During the year 1938 it was engaged in the fire and marine insurance business within the United States, maintaining its principal United States office in New York City; and it was engaged in the business of fire, marine, accident and life insurance at one or more places outside the United States. It commenced business in the United States in 1871. In 1938 the petitioner was subject to United States income tax as an insurance company other than life or mutual as defined in Section 204 of the Revenue Act of 1938.

II.

In connection with the transaction of its fire and marine insurance business (including the investment of funds relating thereto), the petitioner incurred and paid ordinary and necessary business expenses of £62,728 in 1938 at its Home Office in London, England, which were connected with its income from sources within the United States but could not definitely be allocated thereto. For the purpose of apportioning the said expenses to United States income, the petitioner's gross income from sources within the United States was $6,154,722.21 or $5,582,020.93 or some intermediate figure, depending upon the correctness of including therein (1) interest as follows: (a) $35,882.08 from United States Treasury Bonds, (b) $4,174.89 from United States Treasury Notes, (c) $11,156.25 from Home Owners' Loan Corporation Bonds, Series "F" and "G", (d) $311. from Reconstruction Finance Corporation Notes, Series "N", (e) $29,370.22 from bonds of various States of the United States or political subdivisions thereof, or total interest of $80,894.44, and (2) $491,806.84, representing 85 percent of the amount of dividends received by the petitioner from domestic corporations which were subject to taxation under Title I of the Revenue Act of 1938 (the petitioner was not subject to United States tax on any of the six items so excluded from the petitioner's gross income from sources within the United States); and the gross income from all sources of the petitioner's fire and marine departments was

$17,875,569.67, which included all income from sources within the United States. The respondent allowed the petitioner a deduction of $90,884.23 for unallocable Home Office expenses, computed by applying to £62,728 the ratio of $5,582,020.93 to $17,875,569.67. The parties are agreed that the respondent's computation was correct if none of the items described in (1) and (2) above was properly includible in gross income from sources within the United States for purposes of computing the applicable ratio. Otherwise, upon the Court's determination that one or more of such items was properly includible, the parties will agree upon the amount of the deduction.

III.

As a British corporation the petitioner is subject to British income tax upon its income and profits from all sources, including its income from sources within the United States. The petitioner incurred and paid a standard British income tax liability of £174,025 upon the 1938 income and profits from all sources of its Fire, Marine and Accident Departments; and it incurred and paid a liability of £25,753 for National Defence Contribution, an additional British income tax imposed upon such income and profits. Each of such liabilities was connected with the petitioner's income from sources within the United States but could not definitely be allocated thereto. For the purpose of apportioning such British income tax liabilities to United States income, the petitioner's gross income from sources within the United States was as stated in paragraph II hereof; and the gross income from all sources of its Fire, Marine and Accident Departments was $22,353,543.32,* which included all income from sources within the United States. The respondent allowed the petitioner a deduction of $231,469.89 for unallocable British income taxes, computed by applying to the sum of £174,025 (standard tax) and £25,753 (National Defence Contribution) the ratio of $5,582,020.93 to $22,353,543.32. The parties are agreed that the respondent's computation was correct if no part of the interest and dividends detailed in paragraph II hereof was properly includible in gross income from sources within the United States for purposes of computing the applicable ratio. Otherwise, upon the Court's determination that one or more of such items of income was properly includible in gross income from sources within the United States, the parties will agree upon the amount of the deduction.

IV.

During 1938 the petitioner had outstanding three issues of securities called "Union Debenture Stock," "West of Scotland Debenture Stock" and "British General Debenture Stock", the aggregate par or face value of which varied from £1,469,884 at the beginning of the year to £1,467,121 at the end of the year. The "Union Debenture Stock" was issued in 1907 for the purpose of raising funds for the petitioner to acquire the outstanding stock of the Union Assurance Society, Ltd., a British insurance corporation which is engaged in business in various parts of the world including the United States. The "West of Scotland Debenture Stock" and "British General Debenture Stock" were issued in 1924 and 1926, respectively, for the purpose of raising funds for the petitioner to acquire the outstanding stock of the West of Scotland Insurance Co., Ltd., and the British General Insurance Co., Ltd., respectively, each of which is a British insurance corporation. The West of Scotland Insurance Co., Ltd. has never engaged in

---

*This figure includes all the gross income which produced the net income upon which the petitioner's British tax liabilities were imposed. It includes Accident Department income, since the tax liabilities include Accident Department profits, which cannot be segregated.

business in the United States; the British General Insurance Co., Ltd. is engaged in business in various parts of the world including the United States. No part of the income of these three companies was included in the petitioner's income either from sources within the United States or elsewhere; the petitioner paid no tax thereon, and no part thereof was included in the net income upon which the deficiency herein asserted was computed. Shortly after each issuance the petitioner did acquire substantially all the stock of each such company as respectively named above.

In 1938 the petitioner incurred and paid interest of £15,480 on its outstanding "Union Debenture Stock," £17,721 on its outstanding "West of Scotland Debenture Stock" and £18,975 on its outstanding "British General Debenture Stock", or total interest of £52,176. It is agreed that if the Court determines that the payments of interest to the petitioner's Debenture Stock holders were "connected with income from sources within the United States", within the meaning of section 232 (a) of the Revenue Act of 1938, then the petitioner is entitled to a deduction for such interest computed by applying to £52,176 the ratio of its gross income from sources within the United States to its gross income from all sources. It is further agreed that for purposes of computing the amount of the deduction, if any is allowable, the petitioner's gross income from sources within the United States was as stated in paragraph II hereof, and its gross income from all sources was $43,608,950.19,* which included all income from sources within the United States.

Throughout the year 1938, without consideration of any liability created by the petitioner's Debenture Stock issues, it owned assets, located in the United States, which exceeded by at least $6,000,000 its liabilities to United States policyholders and creditors.

There are submitted herewith, and as a part of this Stipulation, photostatic copies of the certificates evidencing the petitioner's "Union Debenture Stock", "West of Scotland. Debenture Stock" and "British General Debenture Stock" (Exhibits "A", "B" and "C", respectively), and photostatic copies of the trust indenture securing each such issue (Exhibits "D", "E" and "F", respectively).

## V.

During the year 1938 the petitioner owned substantially all the outstanding stock of three United States insurance corporations, the American Central Insurance Company, the California Insurance Company and the Commercial Union Fire Insurance Company of New York. The American Central Insurance Company was organized and incorporated under the laws of the State of Missouri in 1853. A controlling interest in its outstanding stock was acquired by the petitioner through cash purchase in 1916. During 1938 the petitioner owned 19,985¼ of its 20,000 outstanding shares. The California Insurance Company was organized and incorporated under the laws of the State of California in 1864. A controlling interest in its outstanding stock was acquired by the petitioner through cash purchase in 1913. During 1938 the petitioner owned 24,945 of its 25,000 outstanding shares. The Commercial Union Fire Insurance Company of New York was incorporated at the instance of the petitioner in 1890 under the laws of the State of New York. The petitioner originally subscribed to all its stock and has since owned it all, except qualifying shares. Each of such companies is engaged in the fire insurance business in the United States. None has ever engaged in business in England, nor been authorized to do so. Under British law, due to the petitioner's substantial ownership and control of its

---

*This figure includes all gross income from all sources of the petitioner's Fire, Marine, Accident and Life Departments.

American subsidiaries, the petitioner is subject to British income tax and National Defence Contribution on the net income and profits of such subsidiaries, computed in the same manner as its own income and profits, and without regard to dividends received from them. Such profits are included with those resulting from the petitioner's own operations and are assessed for tax against the petitioner. In 1938 the petitioner's American subsidiaries realized income and profits aggregating $500,036.91 which were subjected to British income tax of $175,012.92 and they realized income and profits aggregating $299,916.00 which were subjected to National Defence Contribution of $14,995.80. The said taxes were imposed upon and paid by the petitioner and were apart from and in addition to the British income tax and National Defence Contribution referred to in paragraph III hereof. The petitioner was not reimbursed for such payments. During 1938 the petitioner received dividends from its three American subsidiary companies in the aggregate amount of $522,881.57. The petitioner's income from sources within the United States, as hereinbefore set forth, did not include the profits of the said American subsidiaries, except that there was included in the petitioner's gross income from sources within the United States the dividends received from them, of which 85 per cent was allowed as a credit under section 204 (a) (2) (B) of the Revenue Act of 1938 and only 15 per cent was taxed to the petitioner by the United States. The respondent allowed as a deduction no part of the British income tax or National Defence Contribution paid by the petitioner on the income and profits of its American subsidiaries.

## VI.

The petitioner duly filed its United States income tax return for the calendar year 1938 with the Collector of Internal Revenue for the Third New York District. * * *

*      *      *      *      *      *      *

In addition, at the hearing the parties stipulated the following:

The ordinary and necessary business expenses incurred and paid by petitioner at its home office in London, in connection with its fire and marine insurance business, itemized by years, were:

| Year | Rent rates and taxes | Advertising | Directors' fees and auditors' fees | Law costs | Postage | Printing and stationery | Salaries | Total |
|---|---|---|---|---|---|---|---|---|
| 1938 | £7,295 | £389 | £6,373 | £132 | £1,173 | £1,255 | £46,111 | £62,728 |
| 1939 | 7,685 | 410 | 6,722 | 139 | 1,237 | 1,323 | 48,638 | 66,164 |

The petitioner advances three contentions. They will be stated and discussed separately.

### I.—*The Question of Ratio.*

The petitioner, a foreign insurance corporation (other than life or mutual) engaged in business within the United States, is subject to tax under section 204 of the Revenue Act of 1938. The Commissioner, in computing petitioner's deductions from income within the United States for business expenses incurred at the home office in London, and for British income taxes paid, used the ratio provided by Regulations

101, article 119–10, under the authority of section 232 (a), Revenue Act of 1938, that is, ratio of gross income from sources within the United States to gross income from all sources. He did not, however, include in the income from sources within the United States (a) certain nontaxable interest received by the petitioner, and (b) 85 percent of dividends received by the petitioner from domestic corporations. This was upon the theory, as advanced in the respondent's brief, that under section 204 (e)[1] the allowance of those items would result in a double deduction, the petitioner having already had the benefit of nontaxability upon both the interest and the 85 percent of dividends from domestic corporations by reason of the provisions of section 204 (a),[2] taxing the petitioner upon "special class net income" defined as net income from sources within the United States, minus credit for interest on obligations of the United States and its instrumentalities (which covers the interest here in question), and minus the credit for dividends received from domestic corporations, as provided by section 26 (b).

The petitioner points out that the respondent's position has been sustained in *London & Lancashire Insurance Co., Ltd.*, 34 B. T. A. 295, and *Royal Insurance Co., Ltd.*, 38 B. T. A. 955, but first "respectfully asks that this question be reviewed *de novo* and frankly seeks that the Court overrule its decisions" (in the above cases). It is insisted that section 204 (e) merely provides that "the same item" be not twice deducted, and that deduction of nontaxable interest or dividend income under one section, and deduction of a tax or expense attributable to such interest or income allowed by another section, does not constitute double deduction of "the same item." The petitioner urges that section 204 (e) was intended merely to avoid possible overlapping of deductions provided as to insurance matters in section 204 itself, and not to affect matters elsewhere in the statute; that deductions are not unallowable merely because attributable to non-

---

[1] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

   *        *        *        *        *        *        *

  (e) DOUBLE DEDUCTIONS.—Nothing in this section shall be construed to permit the same item to be twice deducted.

[2] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

  (a) IMPOSITION OF TAX.—

   *        *        *        *        *        *        *

  (1) IN GENERAL.—In lieu of the tax imposed by sections 13 and 14, there shall be levied, collected, and paid for each taxable year upon the special class net income of every insurance company (other than a life or mutual insurance company) a tax of 16½ per centum of the mount thereof.

  (2) SPECIAL CLASS NET INCOME OF FOREIGN COMPANIES.—In the case of a foreign insurance company (other than a life or mutual insurance company), the special class net income shall be the net income from sources within the United States minus the sum of—

  (A) INTEREST ON OBLIGATIONS OF THE UNITED STATES AND ITS INSTRUMENTALITIES.—The credit provided in section 26 (a).

  (B) DIVIDENDS RECEIVED.—The credit provided in section 26 (b).

   *        *        *        *        *        *        *

taxable income; that section 24 (a) (5) is the only limitation, and that it disallows only deduction "allocable to one or more classes of income other than interest  *  *  *  wholly exempt from the taxes imposed by this title," and that the interest and dividends here involved are therefore not affected; that section 204 (e), if construed as in the above cited cases, is in conflict with section 204 (d),[3] for the latter provides the same deductions for all foreign corporations, whether insurance or otherwise.  The petitioner therefore argues that, since conflict should be avoided in interpretation, a construction of section 204 (e) which deprives petitioner of the same deductions as other foreign corporations is precluded, and that the statutory definition of insurance company income, including investment income, found in section 204 (b) (1) (3), means gross income earned "from interest, dividends and rents," which definition is violated by interpretation under the above decisions.  Lastly, it is contended that under such interpretation section 23 (b), disallowing deduction of interest paid on indebtedness incurred to carry obligations bearing wholly exempt interest, would be ineffective as to a foreign insurance corporation and a determination of ratio of foreign and domestic income in case of such corporation, since section 204 (e) as interpreted would exclude it anyway, with all nontaxable income.

We have considered in detail these points of disagreement upon the conclusion reached in the two decisions above named.  Considering the patent differences in approach to the taxation of insurance companies and other corporations, as shown in the history of the legislation, we can not agree that decisions involving other corporations, such as *Texas Land & Mortgage Co., Ltd.*, 30 B. T. A. 861, or *Third Scottish American Trust Co., Ltd.* v. *United States*, 37 Fed. Supp. 279, cited by the petitioner, are helpful here.  The latter case is by the court specially distinguished from the *London & Lancashire Insurance Co.* case, by saying that there the Board expressly reached its decision on subsection (e) of section 204 of the Revenue Act of 1928, and that such subsection "related alone to insurance companies and has no application to a taxpayer of the character of plaintiff in the case at bar." *Texas Land & Mortgage Co., Ltd.*, *supra*, was also not an insurance corporation, so the distinction set up in the *Third Scottish American Trust Co.* case is there applicable.  Nor do we believe that the provision in section 204 (e) against double deduction was intended to be applicable only to possible overlapping deductions within section 204 itself.

---

[3] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

    *       *       *       *       *       *       *

　　(d) DEDUCTIONS OF FOREIGN CORPORATIONS.—In the case of a foreign corporation the deductions allowed in this section shall be allowed to the extent provided in Supplement I in the case of a foreign corporation engaged in trade or business within the United States or having an office or place of business therein.

The language is broad. The field is broad, and the intent to avoid duplication of deductions in general is, in our opinion, apparent. Petitioner's view that the use of "the same item" precludes consideration of nontaxable interest and dividends for which the taxpayer already had received diminution of taxable income is, in our opinion, too narrow to be tenable. With reference to the text of section 24 (a) (5), first found in the Revenue Act of 1934, and the contention that it limits deductions, we think not only that in general it can not override the provision of section 204 (e), more closely connected with insurance companies, but also that the language itself answers the petitioner's view, so far as the 85 percent of dividends is concerned, for section 24 (a) (5) forbids deductions (other than as concerns interest) where the item is "allocable to one or more classes of income." We find explanatory thereof the Senate Committee Report (Committee Reports, Revenue Acts 1913 to 1938, inclusive, p. 606) as follows:

* * * Accordingly, your committee recommends that the disallowance be applied to all classes of tax-exempt income except interest. * * *

Since the dividends received by petitioner from its American subsidiaries were, to the extent of 85 percent thereof, tax exempted through the effect of section 26 (b) of the Revenue Act of 1938, it is apparent that section 24 (a) (5) can on this point at most apply only to interest, even as relates to ordinary corporations and without considering the separate scheme of taxation of insurance companies. Nor do we find irreconcilable conflict between section 204 (d) and section 204 (e), under the interpretation given section 204 (e) by the *London & Lancashire* and *Royal Insurance* cases, *supra*. We do not think that section 204 (d) effects negation of the language of section 204 (e). Double deduction remains prohibited by the latter, and the fact that it immediately succeeds section 204 (d) is persuasive to that view, for such close connection indicates effect upon and exception to the former section. The same is true as to the definition of gross income in section 204 (b) (3). Though that definition includes interest and dividends, nevertheless it offers no conflict with the provision of section 204 (e) against double deductions. Likewise, the fact that section 23 (b), referring to disallowance of interest to carry indebtedness bearing exempt interest, more particularly covers one phase of the subject matter covered by section 204 (e) to us offers no reason for restricting the latter. Section 23 (b) is general in its application, without regard to section 204 and insurance companies.

In the alternative, petitioner suggests that though, in the Revenue Act of 1928, interpreted by the *London & Lancashire* and *Royal Insurance* cases, *supra*, dividends were "deducted," in the Act of 1938, in section 26 (a) and (b), they constitute mere credits, and therefore the above cases may not be applied. We think for the present pur-

pose no such distinction between credit and deduction should be sustained, and that no such distinction was intended by the general language of section 204˙(e). That both the words "deduct" and "credit" are applied to interest in section 204 (c) (8) of the Revenue Act of 1928 is indicative that no such distinction as suggested was preserved. In *Estate of John H. Wheeler*, 1 T. C. 401, we recently said that the dividends paid credit granted by section 27 of the Revenue Act of 1936 is a special credit "in the nature of a deduction" and "deductible from net income."

We are not convinced that the conclusion expressed in *London & Lancashire Insurance Co., Ltd.*, and *Royal Insurance Co., Ltd.*, *supra*, should be overruled. Accordingly, upon the authority of those cases we hold that the Commissioner did not err in failing to include the items of nontaxable interest and 85 percent of dividends received in the petitioner's gross income from sources within the United States in ascertaining the ratio between such income and to a gross income from all sources, in computing deduction of business expenses at the home office in London and British income taxes paid.

## II.—Deduction of Debenture Interest.

The petitioner seeks and the Commissioner denies deduction of certain interest paid within the taxable years upon certain debenture stock. It is agreed that the amounts paid were interest and there appears no denial that it was interest upon indebtedness. The deduction is opposed upon the ground that the petitioner being a foreign corporation, the interest is deductible under sections 232 (a)[4] and 119 (b)[5] of the Revenue Act of 1938 only if "connected with income from sources within the United States," and "can not definitely be allocated to some item or class of gross income" outside the United States; and that here the interest paid has no connection with income from sources within the United States, but can definitely be allocated to income from foreign sources. The principal point made by the

---

[4] SEC. 232. DEDUCTIONS.

(a) In General.—In the case of a foreign corporation the deductions shall be allowed only if and to the extent that they are connected with income from sources within the United States ; and the proper apportionment and allocation of the deductions with respect to sources within and without the United States shall be determined as provided in section 119, under rules and regulations prescribed by the Commissioner with the approval of the Secretary.

[5] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) Net Income from Sources in United States.—From the items of gross income specified in subsection (a) of this section there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the United States.

respondent is that the money was borrowed to purchase and used to purchase the stock of three British insurance companies, no part of the income of which was included in petitioner's income taxed by the United States, and that therefore there is no connection between the interest paid and income from sources within the United States. The petitioner, on the other hand, argues that the indebtedness was general, that the purpose for which the borrow was used is immaterial, that both petitioner's assets abroad and in the United States are subject to execution for payment of the debt, and that such constitutes the necessary connection with income from sources within the United States under the statute. The petitioner relies upon *Third Scottish American Trust Co., Ltd.* v. *United States, supra.* There the Court of Claims concluded that amounts paid by a British corporation were interest, and said:

> Interest paid on borrowed money, of course, has a connection with all of the company's investments, including its investments in the United States, and, therefore, plaintiff is entitled to deduct a ratable part of this interest.

The respondent points out, however, in substance, that the court there had nothing before it except the mere fact that money was borrowed, and that the purpose in borrowing was not specified, while here the money was secured for a specific use, which can be allocated to particular gross income, that is, the income upon the investments which the petitioner made in the stock of the three British corporations. In our opinion, the distinction is well founded. So far as appears from the opinion in the *Third Scottish American Trust* case, no question was raised such as we here confront. Nothing indicates that the money borrowed in that case was not used for general purposes, to the benefit of, if not actually used in, the company's business in the United States. Such a fact would patently furnish connection with income from sources within the United States. Here, however, we have squarely for decision the question of effect of use of the borrowed money beyond the confines of this taxing jurisdiction. The petitioner relies solely upon the fact that the money borrowed was general corporate indebtedness, and that the fact that assets in the United States could be subject to its payment furnishes the necessary connection with income from sources therein. The statute, section 232, clearly requires a definite connection. Apportionment and allocation shall be determined as provided in section 119. The latter section recites, in effect, that only that which "can not definitely be allocated to some item or class of gross income" shall be apportioned. The petitioner is contending only for apportionment and a ratable part of the interest paid. We think the language of section 119 is strong indication that if the gross income involved can be identified, the

deduction claimed based thereon can not be apportioned, but must be considered with the identified income. We think that the connection between the interest and the petitioner's investment of the borrowed money in British stock is much more definite than it is with sources of income in the United States, which as already seen is dependent merely upon possibility of collection of the debt from assets in the United States. One of the corporations purchased was never engaged in business in the United States and none contributed any part of petitioner's income. No part of the income of such companies was included in the net income upon which the deficiency herein was based, and the petitioner paid no tax thereon. That in general there should be direct connection between money borrowed and interest deducted is indicated in section 23 (b), Revenue Act of 1938, under which deduction for interest paid is not allowed if the principal indebtedness was incurred or continued to purchase or carry obligations, the interest upon which is wholly exempt from tax. Though of course this section is, no doubt, primarily directed to domestic securities of municipality, state, or nation, yet the principle is seen to extend to indebtedness carrying investments yielding tax not to the United States, but to a foreign country, as is here involved. We find no connection between the interest and petitioner's income here involved, within the intendment of section 232, and hold therefore that the Commissioner did not err in failing to allow apportionment and deduction of the interest paid.

### III.—*British Tax Deduction.*

The petitioner seeks deduction of certain taxes paid to the British Government, by which they were laid upon the net income and profits of three domestic corporations organized under the laws of New York, Missouri, and California, respectively, substantially all of the stock of which was owned by the petitioner. Under British law, the petitioner, it is stipulated, is subject to British income tax and national defence contribution on the net income of such subsidiaries "computed in the same manner as its own income and profits, and without regard to dividends received from them." During the taxable years the petitioner received from the subsidiaries dividends as follows: In 1938, $522,881.57; in 1939, $522,881.55. In 1938 the American subsidiaries realized income and profits in the amount of $789,952.91 and in 1939, $277,409.66; which amounts were subjected to British tax. Petitioner's income from the subsidiaries included only the dividends above stated, and thereof 85 percent was allowed as a credit under section 204 (a) (2) (B) of the Revenue Act of 1938.

The petitioner contends that under section 204 (c) (3), Revenue Act of 1938, it is entitled to deduct "Taxes as provided in section

23 (c)";[6] and that the latter section allows it to deduct all taxes. The petitioner argues that section 24 (a) (5)[7] does not apply, and that the taxes in question are allocable to income from sources within the United States, received by the petitioner in the form of dividends from its domestic subsidiaries. The respondent's position is, in effect, that the taxes paid to Great Britain are based not upon income received, but upon a fiction of British law that the income and profits of the subsidiaries are the income of the parent corporation, and that the petitioner is actually seeking to add to the tax law of the United States a deduction for which no provision is therein made. He points out that one seeking deduction must point to an applicable statute, and show compliance with its exact terms. *Helvering* v. *Ohio Leather Co.*, 317 U. S. 102.

The difficulty we find in following petitioner's argument is that it applies regardless of whether the petitioner in fact had income from its American subsidiaries. They might have income and profits without paying dividends, or might pay dividends in years when they had no earnings or profits, or less than dividends paid. In fact, as above seen, in 1939 their income and profits and therefore the amount taxed by the British Government amounted to only $277,409.66, whereas dividends paid to the petitioner were $522,881.55; while in 1938 the income and profits were $799,952.91 (upon which the British tax upon petitioner was computed) though only $522,881.57 was received as dividends. In such a situation, under section 24 (a) (5) no deduction may be allowed if it is "allocable to one or more classes of income other than interest * * * wholly exempt from the taxes imposed by this title." If we assume that, as petitioner argues, the tax here is allocable to sources within the United States, nevertheless, in case the petitioner receives no dividends, though the income and profits are taxed to it by the British Government, then the United States can not tax to the petitioner any income from the subsidiaries, and we appear asked to allow a deduction allocable to a class of income "wholly exempt from the

---

[6] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(c) TAXES GENERALLY.—Taxes paid or accrued within the taxable year, except—

* * * * * * *

(2) income, war-profits, and excess-profits taxes imposed by the authority of any foreign country or possession of the United States; but this deduction shall be allowed in the case of a taxpayer who does not signify in his return his desire to have to any extent the benefits of section 131 (relating to credit for taxes of foreign countries and possessions of the United States).

[7] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

* * * * * * *

(5) Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this title.

taxes imposed by this title" within the text of section 24 (a) (5). It is true, as petitioner suggests, that the income taxed by the British Government in one sense had its source within the United States, but that was as income of other corporations, and taxed by the United States as such. As income *of the petitioner* it would, in the supposed case of no dividends paid, wholly escape taxation by the United States, yet that taxing authority is asked for deduction of the British taxes paid. The American Government taxes the petitioner only on its income from sources within the United States, does not indulge in the assumption that petitioner's income coincides with that of the income and profits of its subsidiaries, and therefore taxes, in petitioner's hands, only *actual* income, i. e., the dividends received. Thus in 1938 it taxed to the petitioner only the $522,881.57 dividends received (and gave credit for 85 percent thereof), though $799,952.91 was the actual income from sources within the United States, under petitioner's view, and petitioner asks deduction of taxes paid on the larger amount. The petitioner urges that the dividends paid were, because of the 15 percent taxed by the United States, not "wholly exempt from the taxes imposed by this title" under section 24 (a) (5). But what of the taxes upon the amount above dividends; or, what if no dividends were paid? As to such amounts obviously that argument does not apply.

Plainly, in that case, the British tax for which deduction is sought, being upon the income and profits in nowise subject to tax by the United States *in petitioner's hands*, is, so far as the petitioner is concerned, allocable to a class of income wholly exempt from the taxes imposed by the United States—which are, of course, the only taxes within the purview of section 24 (a) (5). If the expression last above quoted as to income exempt from taxes refers, not to income in general and taxed in any hands, but to income taxed in the hands of, and taxed to, the taxpayer involved, then it becomes clear that, above dividends received by the petitioner, it is asking a deduction based upon income wholly exempt from tax by the United States. We think that such is the proper construction of section 24 (a) (5). The American subsidiaries are corporations separate for tax purposes from the petitioner. The "taxes imposed by this title" on some one else can have no logical reference to the petitioner, another taxable entity. Petitioner's error, we think, is in not distinguishing between "sources within the United States" in general, and *taxpayer's* sources. So far as received by the petitioner in dividends, in a sense the amounts taxed to petitioner had such American sources; yet the British Government taxed them, it is stipulated, "without regard to dividends received" and above received dividends, the income tax is thus seen as having no source *to the petitioner* in the United States, but only to its subsidiaries,

separate taxpayers. We can conceive of no reason for allowing a deduction because of sources for *another* taxpayer and think that section 24 (a) (5) definitely forbids it.

The language of sections 232 and 119 (b) further indicate that "sources within the United States" are those of the petitioner, and not of another from whom the income is obtained. *Royal Insurance Co., Ltd., supra*, cited by the petitioner, involved a loss from sources directly connected with the petitioner's own income, no situation such as herein involved. Though we have above discussed an example involving petitioner's income above dividends received, we think the same principles apply to dividends in fact received. Though the *Royal Insurance Co., Ltd.*, case does mention dividends, no question in that respect was before the Board and the present question was not involved. We can not differentiate between dividends, if any are received, and moneys not received at all, for the British tax for which deduction is sought has no relation to dividends, petitioner's only source of income from its subsidiaries. The petitioner is, of course, in part in error in saying upon brief that the taxes are "directly allocable to income from sources within the United States, received by the petitioner in the form of dividends from its domestic subsidiaries," for in 1938 the income taxed and here involved was not by any means all from dividends. This only serves to make clear that the source of the British tax is not income to the petitioner, but income and profits of others, which by a special provision of British law, and unlike that of the United States, is taxable to the petitioner. Moreover, so far as dividends were paid to the petitioner, it has had the benefit of 85 percent credit, above held by us to be a deduction, and double deduction would result from allowance of that here sought under this point. We have above decided against such duplication.

The petitioner, in the alternative, asks for deduction of "15 per cent of the allocable British income taxes claimed, representing that part of such taxes attributable to the taxable portion of the dividends received from its domestic subsidiaries." We discern in the statute, however, no basis for such allowance of a percentage of the taxes paid. The income, after credit given, was 15 percent of *dividends*. The dividends are not the source of the British tax, for it is applied irrespective of dividends. Taking the view that the British tax was not imposed upon income from sources within the United States, within the purview of the statutes above cited, we conclude and hold that the Commissioner did not err in denying the deduction for British taxes.

*Decision will be entered under Rule 50.*