*Decisions will be entered under Rule 50.*

ALLSTATE FIRE INSURANCE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4812–64. Filed December 2, 1966.

*Charles W. Davis*, *William A. Cromartie*, and *Lawrence M. Dubin*, for the petitioner.
*Nelson E. Shafer*, for the respondent.

#### OPINION

DAWSON, *Judge:* Respondent determined deficiencies in petitioner's income taxes for the years ended December 31, 1958, and December 31, 1959, in the respective amounts of $149,433.51 and $34,158.79. Petitioner has claimed overpayments for the same years in the amounts of $90,269.61 and $26,771.48, respectively.

Certain adjustments were either uncontested or have been resolved by agreement of the parties. These will be given effect in the Rule

50 computation. The only issue presented for our decision is whether petitioner, a casualty insurance company, may deduct the prorata portion of its investment expenses attributable to certain items of interest and dividends which are themselves deducted from gross income in computing its taxable income.

The facts have been fully stipulated by the parties and are hereby adopted as our findings. They are summarized below to the extent necessary in deciding the issue before us.

Allstate Fire Insurance Co. (hereafter called petitioner), an Illinois corporation with its principal office at 7447 Skokie Boulevard, Skokie, Ill., is a casualty insurance company subject to the tax imposed by sections 831 and 832 of the Internal Revenue Code of 1954.[1] It filed its Federal income tax returns, Form 1120, on a calendar year basis with the district director of internal revenue at Chicago, Ill.

In 1958 the petitioner incurred costs of $23,676.23 in the handling and management of its investment portfolio, and in 1959 it incurred costs of $24,098.57 for this purpose. Such costs (to the extent that deductibility is not denied under secs. 265, 832, or any other provisions of the Code) constitute ordinary and necessary expenses incurred by petitioner in the operation of its trade or business. Such amounts were deducted in full by petitioner in its computation of taxable income for the years 1958 and 1959.

Petitioner's total income from its investment portfolio during 1958 and 1959 was as follows:

|  | 1958 | 1959 |
|---|---|---|
| Dividends | $160,738.83 | $165,547.94 |
| Interest | 396,698.84 | 322,969.05 |
| Aggregate net capital gain | 11,686.43 | 11,842.84 |
| Total | 569,124.10 | 500,359.83 |

Petitioner's reported gross income in computing its taxable income for 1958 and 1959 included "Interest, Dividends, and Rent" in the respective amounts of $557,437.67 and $488,516.99 (the figures set forth above less "aggregate net capital gain"). This included the following:

| Description | 1958 | 1959 |
|---|---|---|
| Interest derived from obligations of certain States and political subdivisions thereof | $215,112.93 | $71,236.70 |
| Dividends received from domestic corporations which were subject to tax under Chapter 1 of the 1954 Internal Revenue Code | 160,738.83 | 165,547.94 |

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

Petitioner, in computing its taxable income, claimed a special deduction for 85 percent of those dividends received by it from domestic corporations which were subject to tax under chapter 1 of the Code. Such deductions amounted to $136,628 for the year 1958 and $140,715.75 for the year 1959. Petitioner also deducted, in computing its taxable income for the years 1958 and 1959, the respective amounts of $215,112.93 and $71,236.70 as tax-exempt interest.

Petitioner did not incur, nor did it deduct on its tax returns for the years here involved, any interest on any indebtedness incurred or continued to purchase or carry obligations, the interest on which is exempt from the taxes imposed by subtitle A of the Code.

Petitioner contends that the cost of handling and managing its entire investment portfolio is deductible as an ordinary and necessary business expense. It argues that section 832(c) allows to insurance companies (other than life or mutual) deductions for all ordinary and necessary business expenses as well as deductions for tax-exempt interest and for special deductions, including 85 percent of dividends received from domestic corporations. Therefore, petitioner claims that neither the bar of section 832(e) against the double deduction of "the same item" nor any other section of the 1954 Code prevents it from deducting the investment expenses in question. Petitioner then argues an analogy to the tax treatment of similar expenses by other types of corporations to demonstrate that Congress did not intend to bar a similar deduction to any corporation taxable under section 11.

Respondent takes the position that the petitioner cannot deduct the prorata portion of its investment expenses attributable to items of interest and dividends which are themselves deducted from gross income in computing taxable income. He claims that this would enable the petitioner to deduct the same amount from gross income twice: First, as tax-exempt and dividends received income and, second, as the expense of managing and handling the income. This, he claims, would be a double deduction of "the same item," specifically prohibited by section 832(e). Respondent notes that Congress may require tax-exempt income to pay its own way, and with almost missionary zeal he makes this the beachhead for maintaining that his adjustment in petitioner's deductible investment expenses reflects an application of this philosophy.

In "Interest, Dividends & Rent" on its corporate tax return, petitioner included $215,112.93 in 1958 and $71,236.70 in 1959 which were interest on State bonds, etc., and $160,738.83 and $165,547.94 in those years which were dividends received from domestic corporations.

240

It then deducted the interest as tax-exempt income under section 103 [2] and took the amounts of $136,628 and $140,715.75 in those years as special deductions for such dividends under section 243.[3] The parties agree that these deductions are expressly granted to a casualty insurance company, which is taxable under section 831,[4] as deductions from gross income under section 832(c).[5]

---

[2] SEC. 103. INTEREST ON CERTAIN GOVERNMENTAL OBLIGATIONS.

(a) GENERAL RULE.—Gross income does not include interest on—

(1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia;

(2) the obligations of the United States; or

(3) the obligations of a corporation organized under Act of Congress, if such corporation is an instrumentality of the United States and if under the respective Acts authorizing the issue of the obligations the interest is wholly exempt from the taxes imposed by this subtitle.

[3] SEC. 243. DIVIDENDS RECEIVED BY CORPORATIONS.

(a) GENERAL RULE.—In the case of a corporation, there shall be allowed as a deduction an amount equal to the following percentages of the amount received as dividends from a domestic corporation which is subject to taxation under this chapter:

(1) 85 percent, in the case of dividends other than dividends described in paragraph (2) or (3);

[4] SEC. 831. TAX ON INSURANCE COMPANIES (OTHER THAN LIFE OR MUTUAL), MUTUAL MARINE INSURANCE COMPANIES, AND CERTAIN MUTUAL FIRE OR FLOOD INSURANCE COMPANIES.

(a) IMPOSITION OF TAX.—Taxes computed as provided in section 11 shall be imposed for each taxable year on the taxable income of—

(1) every insurance company (other than a life or mutual insurance company),

[5] SEC. 832. INSURANCE COMPANY TAXABLE INCOME.

(a) DEFINITION OF TAXABLE INCOME.—In the case of an insurance company subject to the tax imposed by section 831, the term "taxable income" means the gross income as defined in subsection (b)(1) less the deductions allowed by subsection (c).

(b) DEFINITIONS.—In the case of an insurance company subject to the tax imposed by section 831—

(1) GROSS INCOME.—The term "gross income" means the sum of—

(A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners.

\* \* \* \* \* \* \*

(2) INVESTMENT INCOME.—The term "investment income" means the gross amount of income earned during the taxable year from interest, dividends, and rents, computed as follows: To all interest, dividends, and rents received during the taxable year, add interest, dividends, and rents due and accrued at the end of the taxable year, and deduct all interest, dividends, and rents due and accrued at the end of the preceding taxable year.

(3) UNDERWRITING INCOME.—The term "underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred.

\* \* \* \* \* \* \*

(c) DEDUCTIONS ALLOWED.—In computing the taxable income of an insurance company subject to the tax imposed by section 831, there shall be allowed as deductions:

(1) all ordinary and necessary expenses incurred, as provided in section 162 (relating to trade or business expenses);

\* \* \* \* \* \* \*

(7) the amount of interest earned during the taxable year which under section 103 is excluded from gross income;

\* \* \* \* \* \* \*

(12) the special deductions allowed by part VIII of subchapter B (sec. 241 and following, relating to partially tax-exempt interest and to dividends received).

(d) TAXABLE INCOME OF FOREIGN INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL AND FOREIGN MUTUAL MARINE.—In the case of a foreign insurance company (other than a life or mutual insurance company), a foreign mutual marine insurance company, and a foreign mutual fire insurance company described in section 831(a), the taxable income

Petitioner deducted the amounts of $23,676.23 in 1958 and $24,098.57 in 1959 as costs in the handling and management of its investment portfolio. The parties also agree that these are ordinary and necessary business expenses normally deductible under section 832(c)(1). However, respondent asserts that since petitioner has already taken deductions for the tax-exempt interest and the dividends qualifying under section 243, it can deduct as investment portfolio expenses only that portion which is in the same ratio as nondeductible dividends and rent are to the aggregate "Interest, Dividends & Rent" listed on petitioner's corporate tax returns. Thus respondent argues that of the total investment expenses claimed as deductions by petitioner the amounts of $14,939.49 in 1958 and $10,455.61 in 1959 should be disallowed to prevent the double deduction prohibited by section 832(e).

Respondent does not contend that the deductions here are barred by section 265 of the 1954 Code.[6] Section 1.265-1(b)(1), Income Tax Regs., provides that "class of exempt income" means only a class which is wholly excluded from gross income under any provision of subtitle A, and the dividends received from domestic corporations which are deductible under section 243 are only partially excluded (only to the extent of 85 percent). Likewise, the Senate amendment which revised section 265 to its present form specifically protected the right to deduct ordinary and necessary business expenses incurred (as distinct from expenses for the production of income under sec.

shall be the taxable income from sources within the United States. In the case of a company to which the preceding sentence applies, the deductions allowed in this section shall be allowed to the extent provided in subpart B of part II of subchapter N (sec. 881 and following) in the case of a foreign corporation engaged in trade or business within the United States.

(e) DOUBLE DEDUCTIONS.—Nothing in this section shall permit the same item to be deducted more than once.

[6] SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.
No deduction shall be allowed for—
(1) EXPENSES.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle.
(2) INTEREST.—Interest on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest on which is wholly exempt from the taxes imposed by this subtitle. In applying the preceding sentence to a financial institution (other than a bank) which is a face-amount certificate company registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 and following) and which is subject to the banking laws of the State in which such institution is incorporated, interest on face-amount certificates (as defined in section 2(a)(15) of such Act) issued by such institution, and interest on amounts received for the purchase of such certificates to be issued by such institution, shall not be considered as interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle, to the extent that the average amount of such obligations held by such institution during the taxable year (as determined under regulations prescribed by the Secretary or his delegate) does not exceed 15 percent of the average of the total assets held by such institution during the taxable year (as so determined).

212) in earning tax-exempt interest. The Senate committee report provides that:

under the present law * * * the interest on State and some classes of Federal securities are exempt from the income tax. It is contended that under the existing law all expenses incurred in the production of such income are allowable as deductions. The House bill specifically disallows expenses of this character. While your committee is in general accord with the House provisions, *it is not believed that this disallowance should be made to apply to expenditures incurred in earning tax-exempt interest.* To do so might seriously interfere with the sale of Federal and State securities, which would be unfortunate during the present emergency. Accordingly, your committee recommends that the disallowance be applied to all classes of tax-exempt income except interest. Thus, a bank or other financial institution will not be denied a deduction for expenses incurred in earning tax-exempt interest. [Emphasis added. S. Rept. No. 558, 73d Cong., 2d Sess., pp. 26-27 (1934), 1939-1 C.B. (Part 2) 606.]

We need not ponder this issue like a jeweler searching for flaws. Applying the principle of *Commissioner* v. *Brown*, 380 U.S. 563 (1965), that common words are to be given their common and ordinary meaning in interpreting the Internal Revenue Code, we think the plain and ordinary meaning of section 832(e) does not prohibit the deduction of the expenses claimed here. This petitioner has not deducted *the same item* twice. It has deducted several separate and distinct items. Following the statute, it has deducted interest, which under section 103 would be excluded from income (sec. 832(e)(7)); a special deduction with respect to dividends received, as determined under section 243 (sec. 832(c)(12)); and all ordinary and necessary business expenses incurred, as provided by section 162 (sec. 832(c)(1)). The pattern of deductions set forth in section 832(c) gives no indication that each and every one of these items (as well as the others listed therein) is not to be deducted in full. Within section 832(c) the only limitations on the itemized deductions are built into the separate paragraphs and in no way modify or limit other paragraphs in that section.[7] We believe the petitioner has kept faith with the statutory scheme and has not deducted the same item more than once. Three totally different kinds of items were deducted under three different paragraphs of section 832(c). Therefore, even under the most strained interpretation of section 832(e), this seems permissible.

Sections 1.832-2(a) and 1.832-5(a), Income Tax Regs., set forth respondent's position with respect to the deductions which an insurance company (other than life or mutual) may take. They provide:

(a) The deductions allowable are specified in section 832(c) and by reason of the provisions of section 832(c) (10) and (12) include *in addition* certain deductions provided in sections 161, 241 and following. *The deductions, however, are*

---

[7] We do not mean to imply that sec. 832(e) has no meaning. For example, sec. 832(e) was necessary to prevent expenses and losses deducted in the computation of underwriting income under sec. 832(b)(3), before its inclusion in gross income under sec. 832(b)(1), from being deducted again under sec. 832(c).

*subject to the limitation provided in section 265, relating to expenses and interest in respect of tax-exempt income.* * * * For the purposes of section 172, relating to net operating loss deduction * * * the allowable deductions shall be those allowed by section 832(c) with the exceptions and limitations set forth in section 172(d). [Emphasis supplied.]

It is noteworthy that while the Commissioner's regulations under section 832 state that the deductions permitted by section 832(c) are subject to the limitations of sections 265 and 172, they do not mention section 832(e) as a further limitation. Indeed, none of the regulations under section 832 mention section 832(e), let alone as a limiting factor of the significance he now urges. Hence we view with skepticism any attempt by the respondent to use section 832(e) to limit the deductions specifically permitted by section 832(c).

The substantially identical predecessors of section 832(e) have been considered in three cases, all of which dealt with foreign insurance companies doing business in this country. See *Commercial Union Assurance Co., Ltd.*, 1 T.C. 1166 (1943), modified and affirmed 144 F. 2d 994 (C.A. 2, 1944), and reversed and remanded on other grounds 151 F. 2d 98 (C.A. 2, 1945); *Royal Insurance Co., Ltd.*, 38 B.T.A. 955 (1938); and *London & Lancashire Insurance Co., Ltd.*, 34 B.T.A. 295 (1936). In each of these cases the issue related to the proper method of pro rating between United States and foreign source "gross income" the British taxes and home office expenses incurred for the benefit of both sources but not specifically allocable to either. All three taxpayers, in arriving at taxable income, deducted their tax-exempt interest and the special deductions for dividends received from domestic corporations. They then claimed the right to add these amounts back into their U.S. gross income in determining the portion of the disputed expenses and taxes which were deductible on their corporate returns under the formula prescribed by the Commissioner.[8] It was held in each case that the use of this allocation formula in the manner advocated by the foreign insurance companies would give rise to a double deduction of "the same item" such as was then prohibited by section 204(e) of the Revenue Act of 1928 (a forerunner to sec. 832(e)). In so holding, the application of section 204(e) was extended. For ex-

---

[8] SEC. 232. DEDUCTIONS. [Revenue Act of 1928]

In the case of a foreign corporation the deductions shall be allowed only if and to the extent that they are connected with income from sources within the United States; and the proper apportionment and allocation of the deductions with respect to sources within and without the United States shall be determined as provided in section 119, under rules and regulations prescribed by the Commissioner with the approval of the Secretary.

SEC. 119(e). Income from sources partly within and partly without United States.—* * * Where items of gross income are separately allocated to sources within the United States, there shall be deducted (for the purpose of computing the net income therefrom) the expenses, losses and other deductions properly apportioned or allocated thereto and a ratable part of other expenses, losses or other deductions which cannot definitely be allocated to some item or class of gross income.

ample, in *Commercial Union Assurance Co.* v. *Commissioner*, 144 F. 2d at 996, the Court of Appeals said:

Subsection (e) is general in language and its operation is not confined to the deductions expressly dealt with in the section of which it is a part. It broadly forbids deductions of the same item twice and prohibits the taking of a second deduction attributable in whole or in part to the same item and thus eliminates the possibility of double deductions.

Respondent contends that under this construction of section 204(e) (now sec. 832(e)) the petitioner has claimed a double deduction in its attempt to take not only deductions for its tax-exempt interest income and the dividends received from domestic corporations but also deductions for the costs of producing them. This, he argues, is analogous to the attempt in the foreign insurance cases to deduct British taxes and home office expenses attributable to tax-exempt interest and domestic dividends after excluding the interest and dividends in ascertaining United States "taxable gross income"; and that those cases control this case.

We disagree with respondent's interpretation of these foreign insurance cases. By their construction of section 204(e), this Court and the Court of Appeals wanted to prevent the use of the same item twice in seeking two deductions. Each of the foreign insurance companies deducted tax-exempt interest and domestic dividends in arriving at U.S. taxable income. They then wanted to include them in gross income for the purpose of determining the allocable portion of general expenses to U.S. source income under the formula provided by section 119 (see fn. 8, *supra*). The net effect was to deduct such items for one purpose and add them back to create another deduction. That the courts had the prevention of this type of transaction in mind when they invoked section 204(e) is borne out by a close examination of the following language which construed the words "same item" as used in that section:

*To be sure, the two deductions are not exactly the same* because what we shall call the first [that allowable under subsection (a)(2)(A) and (B)] frees the entire amount from taxation while that allowable under sec. 232 frees additional income from taxation only to the extent that the sums first deducted are used to increase the ratio by which this amount of the second is determined. *But this difference exists only in the manner of computing the amount of a second deduction on account of the same item.* [Emphasis added. *Commercial Union Assurance Co.* v. *Commissioner*, 144 F. 2d at 996.]

Similarly, this Court examined only the proper method of finding the portion of general expenses allocable to "taxable gross income from sources within the United States" when it said:

To allow any greater portion of the home office expenses and British taxes would be *in effect* allowing the same item to be deducted twice, which is prohibited by section 204(e). [Emphasis added. *London & Lancashire Insurance Co., Ltd., supra* at 299. See also *Royal Insurance Co., Ltd., supra* at 960.]

There was no mention of using section 204(e) to limit deductions which were expressly granted by section 204(c), but only to prohibit the inclusion of items of income, previously deducted, in arriving at a statutory formula to allocate general expense deductions between domestic and foreign income sources. It is also significant that to the extent investment expenses, such as those here involved, were directly related to U.S. source income, they were allowed in toto as deductions without challenge by the Commissioner. This lends credence to the fact that section 832(e) was not intended to be the means of denying deductions of business expenses which relate to items of income themselves deductible under section 832(c).

Petitioner relies heavily on *Pink* v. *United States*, 105 F. 2d 183 (C.A. 2, 1939), affirming an unreported case (E.D.N.Y. 1938, 21 A.F.T.R. 1286, 37-2 U.S.T.C. par. 9441). While the *Pink* case is not squarely in point, it at least shows the willingness of the Court to permit deductions based on items not included in taxable income, In *Pink*, the taxpayer's business consisted of insuring titles to real estate and guaranteeing real estate mortgages. In accordance with an earlier Supreme Court decision,[9] such business was taxable as an insurance company under section 246 (the predecessor in part to secs. 831 and 832(a) and (b)). Certain of its fees and charges were excludable from gross income, a loophole that was later closed by an amendment to the Revenue Act of 1932 [10] revising the definition of gross income of insurance companies. Since these fees and charges were not includable in gross income, there was no need to deduct them under section 247(a) (the predecessor in part to sec. 832(c)). The Court then found that the taxpayer could deduct expenses in earning this exempt income since section 247(a)(1) permitted the deduction of all ordinary and necessary business expenses, not just those incurred in producing taxable income. Although the Court did not discuss the applicability of section 247(c) (the predecessor to sec. 832(e)) because there was no deduction of the excluded income under the statute before expenses attributable thereto were deducted, the rationale of permitting a deduction for all ordinary and necessary business expenses, regardless of whether used to produce taxable or exempt income, is certainly applicable to this case.

The respondent cites *United States* v. *Atlas Insurance Co.*, 381 U.S. 233, 247 (1965), for the proposition that "the tax laws may require tax-exempt income to pay its way." But there the Supreme Court was examining the validity of a specific statutory formula which saddled taxable and exempt income with equal shares of the company's obligation to its policyholders. Likewise, in the foreign insurance cases, the courts ascertained the meaning of a statutory formula for

---

[9] *United States* v. *Home Title Insurance Co.*, 285 U.S. 191 (1932).

[10] Sec. 204(b)(1)(c), Revenue Act of 1932.

allocating general expenses between domestic and foreign source "gross" income. Here, however, Congress has not devised a statutory formula to make "tax-exempt income pay its way." It has given to insurance companies (other than life and mutual) the specific cumulative deductions listed in section 832(c), including *all* ordinary and necessary business expenses under section 832(c)(1); it has limited the prohibition against a double deduction under section 832(e) to only the double deduction of "the same item;" and, as explained in the Senate Finance Committee report, an exception was made as to interest under section 265(1) so that businesses would not be denied a deduction for expenses incurred in earning tax-exempt interest.[11] None of these provisions indicate an intent by Congress to make tax-exempt interest and deductible domestic dividends earned by insurance companies (other than life and mutual) pay their way, even though it is clear that Congress could have created such a requirement if it had so desired.

There is no pervasive legislative mandate to make tax-exempt interest and partially exempt dividend income pay its own way. While barring the deduction of otherwise deductible expenses allocable to income wholly exempt from taxes, section 265(1) excepts interest and partially exempt income from its sweep. Nor is there any other provision under the 1954 Code which would bar the deductions in question to domestic corporations subject to the tax imposed by section 11. Moreover, there is no indication that the respondent has challenged the type of deductions here involved in any other area despite obvious opportunities to do so, as in the case of banks, investment companies, and personal holding companies. To be sure, in those instances where the allowance of deductions for both business expenses and dividends received has been considered by Congress to be inappropriate for a particular computation, it is generally the latter deduction which has given way.[12] And in those instances where the deduction of expenses under section 162 has been limited by Congress, the purpose has been clearly and unequivocally expressed.[13]

---

[11] S. Rept. No. 558, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 606.

[12] See, for example, secs. 170(b)(2) (limitation on charitable contributions by corporation); 535(b)(3) (definition of accumulated taxable income); 601 (special deduction for bank affiliates); 804(c)(5)(C) (definition of investment yield for life insurance companies); 809(e) (determination of gain or loss from operations in the case for life insurance companies); 852(b)(2)(B) (definition of investment company taxable income); 857(b)(2)(B) (definition of real estate investment trust taxable income); 891 (doubling of rates of tax on certain foreign corporations); and 1247(a)(2)(iii) (election by foreign investment companies to distribute income currently).

[13] See, for example, secs. 114(b) (treatment of expenses by taxpayer conducting sports programs for the American Red Cross); 263(b) (capitalized expenditures for advertising or goodwill); 267 (losses, expenses, and interest with respect to transactions between related taxpayers); 274 (disallowance of certain travel, entertainment, etc., expenses); 404 (contributions to certain employees trusts, etc.); and 421 (certain employee stock options).

Accordingly, we hold that the petitioner can deduct expenses relating to tax-exempt interest income and dividends received from domestic corporations, even though it can also deduct the interest and special dividends under section 832(c). In our opinion the cumulative deductions of section 832(c) (1), (7), and (12) are not "the same item" within the meaning of that term as used in section 832(e). Under these circumstances Congress has not chosen to exercise its power to make tax-exempt income pay its way. Consequently, the investment expenses incurred by petitioner in the years 1958 and 1959 are allowable in the full amounts claimed by it on its Federal tax returns.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

WITHEY, *J.*, concurring: I concur in the result reached by the majority for the reason that there do not appear to be two deductions with respect to interest income of the petitioner. Section 103 of the 1954 Code provides that "Gross income does not include interest on" three classes of governmental obligations. Section 832(c)(7) provides, in words, for a deduction of "the amount of interest earned during the taxable year which under section 103 is excluded from gross income." Even though the latter section refers to such interest broadly and generally as one of the "deductions allowed" and that they "shall be allowed as deductions," I do not understand that this is the deduction referred to in subsection (e) of section 832, as the interest received was never a part of gross income and therefore could not be a deduction therefrom in that sense. Such receipts never having been income would not in the normal course of events be included in gross income except for the special accounting provisions imposed upon insurance companies such as petitioner. Once having nevertheless included such income, it is necessary to so adjust gross income as to comply with section 103 and the drafters of the statute seem to have referred to this process as a deduction. Such a "deduction" cannot normally in my estimation be one of the deductions referred to in subsection (e).