CC-1999-865                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Continental Insurance Company<br>    Demandante-Recurrida<br><br>          v.<br><br>Secretario de Hacienda<br>    Demandado-Peticionario | Certiorari<br><br>2001 TSPR 67 |

Número del Caso: CC-1999-865

Fecha: 7/mayo/2001

Tribunal de Circuito de Apelaciones:
                              Circuito Regional I

Juez Ponente:
                              Hon. Charles A. Cordero Peña

Oficina del Procurador General:
                              Lcda. María Astrid Hernández Martín
                              Procuradora General Auxiliar

Abogados de la Parte Recurrida:
                              Lcdo. Aurelio Torres Ponsa
                              Lcda. Amaya Iraolagoitia Fernández

Materia: Reintegro de Contribución sobre Ingresos

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Continental Insurance Company

     Demandante-Recurrida

        vs.                          CC-1999-865      Certiorari

Secretario de Hacienda

     Demandado-Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.

      En San Juan, Puerto Rico, a 7 de mayo de 2001.

      Nos toca resolver si una compañía de seguros tiene derecho a reclamar como una deducción en sus planillas de contribución sobre ingreso los gastos relacionados con sus inversiones exentas bajo nuestra extinta Ley de Contribuciones sobre Ingreso de 1954.

I

      Continental Insurance Company of Puerto Rico (Continental), es una corporación organizada en Puerto Rico dedicada al negocio de seguros contra accidentes y desastres. Por no ser una compañía de

seguros de vida ni una compañía mutua[1], Continental computaba su ingreso tributable de acuerdo a las disposiciones de la sección 204 de la Ley de Contribuciones sobre Ingreso de Puerto Rico, Ley Núm. 91 del 29 de junio de 1954[2] (Ley de Contribuciones de 1954), vigente durante los años en que se suscitó la controversia de autos. Con arreglo a éstas, Continental presentó en el Departamento de Hacienda (Hacienda) las planillas sobre ingreso correspondientes a los años contributivos de 1979 y 1980. El ingreso bruto informado originalmente por Continental ascendió a $28,675,045 en 1979 y $31,964,390 en 1980. En este computo Continental no incluyó los intereses recibidos de inversiones en obligaciones del Gobierno Federal y del Estado Libre Asociado de Puerto Rico, contrario a lo requerido por la sección 204 (b)(1) de la Ley de Contribuciones de 1954. La partida de intereses no incluidos ascendió a $3,089,406 para el año 1979 y $3,690,081 para el año 1980.

Posteriormente, Continental recomputó su responsabilidad contributiva y presentó a Hacienda unas planillas de contribución sobre ingreso enmendadas para los años 1979 y 1980. En estas planillas Continental incluyó por un lado, como parte de su ingreso bruto, los intereses

---

[1] La Ley de Contribuciones de 1954, infra, en su Suplemento G regula la tributación de las compañías de seguro. La referida Ley hace una distinción entre compañías de seguro de vida, compañías de seguros que no son de vida ni mutuas y compañías mutuas de seguro.

[2] 13 L.P.R.A § 3204.

recibidos de obligaciones gubernamentales por las cantidades antes mencionadas. Por otro lado, en dichas planillas también dedujo dichos intereses, de acuerdo con la sección 204 (c) (6) de la Ley de Contribuciones de 1954. Además, Continental incluyó como deducciones en las planillas los gastos de inversión relacionados con los referidos intereses y una suma por concepto de pérdidas en las operaciones sufridas en 1981. Ambas se tomaron como deducciones por gastos ordinarios y necesarios del negocio. Conforme a este recómputo, Continental estimó que había pagado contribuciones sobre ingresos **en exceso**, ascendentes a $46,332 en 1979 y $189,913 en 1980. Continental reclamó a Hacienda el reintegro de los pagos en exceso referidos. Mediante una carta de 28 de noviembre de 1995, entregada a la mano al Contador Público Autorizado José Pí, representante de Continental en la reclamación de los reintegros, Hacienda denegó los reintegros de $46,332 y $189,913 solicitados por Continental en relación con los años contributivos 1979 y 1980, respectivamente. Hacienda alegó que el ingreso por intereses informado por Continental estaba exento de contribuciones y, por esa razón, no podían deducirse del computo de la responsabilidad contributiva los gastos incurridos en obtener tales ingresos.

El 27 de diciembre de 1995 Continental presentó una demanda en el Tribunal de Primera Instancia Sala Superior de San Juan para impugnar la referida determinación de Hacienda. Luego de varios trámites procesales, mediante una sentencia sumaria emitida el 18 de febrero de 1998 y notificada el 19 de febrero de 1998, el tribunal a quo ordenó a Hacienda que reintegrara a Continental la cantidad de $236,245 por concepto de contribuciones sobre ingresos cobradas en exceso durante los años 1979 y 1980, más los intereses correspondientes sobre esa suma. El 5 de junio de 1998 el Secretario de Hacienda presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones. Mediante sentencia emitida el 27 de agosto de 1999 y notificada el 10 de septiembre de 1999, el foro apelativo confirmó la sentencia apelada.

Inconforme con la determinación, el Secretario de Hacienda, representado por el Procurador General acudió ante nos y señaló como único error el siguiente:

**Erró el Tribunal de Circuito de Apelaciones al concluir
que Continental Insurance Company of Puerto Rico, Inc. no
incurrió en doble deducción.**

El 23 de diciembre de 1999 expedimos el recurso. El 1 de marzo de 2000 el peticionario presentó un escrito suplementario a su petición de certiorari, y el 31 de marzo del mismo año la recurrida presentó su alegato. Con el beneficio de la comparecencia de ambas partes procedemos a resolver.

II

De conformidad con nuestro ordenamiento constitucional, la facultad para imponer contribuciones radica en forma exclusiva en la Rama Legislativa. Constitución del Estado Libre Asociado de Puerto Rico, Art. VI, Sec. 2. Esa autoridad contributiva es indispensable para el funcionamiento del Estado. Por ello, el poder fiscal es constitucionalmente de naturaleza amplia y abarcadora. F.D.I.C. v. Mun. de San Juan, 134 D.P.R. 385 (1993); Coca Cola Bottling v. Srio. de Hacienda, 112 D.P.R. 707 (1982); U.S. Brewers Association v. Srio. de Hacienda, 109 D.P.R. 456 (1980); RCA v. Gob. de la Capital, 91 D.P.R. 416 (1964); Miranda v. Srio. de Hacienda, 77 D.P.R. 171 (1961).

En términos generales, la Ley de Contribuciones de 1954 imponía una contribución sobre el ingreso neto de las corporaciones. El ingreso neto se computaba reduciendo del ingreso bruto las deducciones permitidas por ley, tales como los gastos ordinarios y necesarios de acuerdo con la sección 23 (a) de la Ley de Contribuciones de 1954.[3] Existían ciertas clases de ingresos que estaban exentos de contribución, por lo que se excluían del ingreso bruto del contribuyente. Por ejemplo, la sección 22 (b) (4) de la Ley de Contribuciones de 1954 excluía por estar exentos del ingreso bruto el ingreso de intereses derivados de: (1) obligaciones de los Estados Unidos, cualquier Estado o Territorio de los Estados Unidos, o sus subdivisiones políticas y del Distrito de Columbia; (2) obligaciones del Estado Libre Asociado de Puerto Rico o sus instrumentalidades o subdivisiones políticas; (3) valores bajo la Ley Federal de Préstamos Agrícolas; (4) hipoteca FHA y Veteranos; (5)

---

[3] 13 L.P.R.A. § 3023 (a)

ciertos préstamos a largo plazo concedidos por compañías de seguro; y (6) valores emitidos por asociaciones cooperativas, entre otras.[4]

La sección 204(a) de la Ley de Contribuciones de 1954 establecía que las compañías de seguro estaban sujetas a una contribución normal y a una contribución adicional, que resultaban ser los mismos tipos de contribución que se imponían a otras corporaciones.[5] Sin embargo, la sección 204 (b) proveía un cómputo especial para la determinación del ingreso bruto de dichas compañías. Esta sección establecía:

> (1)   Ingreso Bruto – "Ingreso Bruto" significa la suma de (A) la cantidad bruta combinada obtenida durante el año contributivo de ingresos de inversión y de ingresos de seguros según se provee en este apartado, computada a base del estado demostrativo de seguros e inversiones del informe anual aprobado por la Convención Nacional de Comisionados de Seguros, y (B) la ganancia durante el año contributivo en la venta u otra disposición de propiedad.
>
> (2)   . . .
>
> (3)   Ingreso de inversión – "Ingreso de Inversión" significa el monto bruto del ingreso obtenido durante el año contributivo de intereses, dividendos y rentas, computado como sigue:
>
>> A todos los intereses, dividen- dos, y rentas recibidos durante el año contributivo súmense los intereses, dividendos y rentas vencidos y acumulados al final del año contributivo precedente.
>
> (4)   . . .

Una vez computado este ingreso bruto de inversión conforme a la sección 204, el inciso (c) de la referida sección enumeraba las deducciones admisibles en el caso de una compañía de seguro que no fuese de vida ni mutua. Entre las deducciones admisibles se encontraban entre otras: (1) todos los gastos ordinarios y necesarios incurridos según lo requería la sección 23 (a) de esta Ley...; (6) El monto de intereses obtenidos durante el año contributivo que bajo la sección 22 (b)(4) estaban exentos de contribución, _supra_. Por otro lado, la sección 204 (e) de la Ley de Contribuciones de 1954 disponía

---

[4] 13 L.P.R.A. § 3022 (b)(4).

[5] 13 L.P.R.A. § 3204 (a).

una limitación: "nada de lo dispuesto en está sección será interpretado en el sentido de permitir que la misma partida sea deducida más de una vez".[6]

El Reglamento establecido al amparo de la Ley de Contribuciones de 1954 disponía en su Artículo 204-3, de manera similar a la sección 204 (c)(1), de la Ley de Contribuciones de 1954 cómo sería el computo para fines contributivos del ingreso neto tributable de una compañía de seguros que no fuese de vida ni mutua, partiendo del ingreso bruto computado conforme a la sección 204 (b)(1) <u>supra</u>.

> Artículo 204-3. **Deducciones admitidas a compañías de seguros que no sean de seguros de vida o compañías mutuas:**
>
> > **Las deducciones admisibles se especifican en la sección 204(c).Las deducciones, no obstante, están sujetas a la limitación provista en la sección 24 (a) (5).** La pérdida neta en operaciones concedida por la sección 23 (s) se determina bajo la sección 122 y reglamentos promulgados según modificados por la sección 205 y el artículo 205-5. Las compañías domésticas de seguros tienen también derecho al crédito por contribuciones sobre ingresos, beneficios de guerra y beneficios excesivos pagados o acumulados durante el año contributivo en los Estados Unidos, posesiones de los Estados Unidos y países extranjeros concedidos a otras corporaciones domésticas por la sección 131. (Véase la sección 206). Entre las partidas que no pueden ser deducidas están las contribuciones sobre ingresos impuestas por el Estado Libre Asociado y las contribuciones sobre ingresos y beneficios impuestas por los Estados Unidos, por cualquier país extranjero o posesión de los Estados Unidos (en casos en que la compañía opte por reclamar hasta cualquier límite un crédito por dichas contribuciones), las contribuciones tasadas sobre obras de beneficio local, la disminución durante el año ocasionada por ajustes del valor en los libros de activos de capital, disminución en obligaciones durante el año debido a tratados de reaseguros, dividendos pagados a accionistas en su capacidad como tales, remesas a la oficina matriz de una compañía extranjera de seguros por la sucursal en Puerto Rico, la devolución de dinero tomado a préstamo. (Énfasis nuestro)

A su vez la sección 24 (a)(5) de la Ley de Contribuciones de 1954 disponía lo siguiente[7]:

---

[6] 13 L.P.R.A § 3204(e)
[7] 13 L.P.R.A. § 3024(a)(5).

(a)     Regla General: Al computarse el ingreso neto **no** se **admitirán** en caso alguno **deducciones** con respecto a:

**(1)** . . .

(5)     **Cualquier cantidad de otro modo admisible como una deducción que sea atribuible a una o más clases de ingresos totalmente exentos de las contribuciones impuestas por esta Ley, háyase o no recibido acumulado cantidad alguna de ingresos de esa clase o clases.**

(6)     . . .

(Énfasis nuestro)

A la luz de los principios antes reseñados, la cuestión ante nos se reduce a determinar si para efectos de la sección 204 de la Ley de Contribuciones de 1954, los intereses en inversiones gubernamentales dejaban de ser ingreso exento y por lo tanto podían deducirse en las planillas los gastos de inversión atribuibles a dichos ingresos.


III

Hacienda sostiene que las compañías aseguradoras que no fuesen de vida ni mutuas que tributaban según la sección 204 de la Ley de Contribuciones de 1954 no recibían un trato contributivo distinto al de las corporaciones regulares, por lo que Continental no tenía derecho a deducir en sus planillas de contribución sobre ingreso los gastos incurridos para generar los ingresos exentos de contribución. Estos gastos no eran deducibles de acuerdo con la sección 24 (a)(5) de la Ley de Contribuciones de 1954, supra.

Continental, por su parte, alega que las compañías aseguradoras que no fuesen de vida, tenían un tratamiento contributivo especial y podían computar su ingreso y deducciones de forma diferente a las corporaciones regulares debido a la naturaleza de su negocio. Alega que los referidos ingresos por intereses en obligaciones gubernamentales no constituían ingreso exento para este tipo de compañía, según dicho término era definido por la Ley de Contribuciones de 1954 y el Reglamento aprobado por el Secretario de Hacienda, por lo que Continental tenía derecho a deducir los gastos de inversión relacionados.

El Tribunal de Circuito de Apelaciones concluyó que en el contexto de la sección 204 de la Ley de Contribuciones de 1954, los intereses no eran ingreso exento, así que Continental tenía derecho a deducir los gastos de inversión relacionados. También señaló que Continental no había incurrido en una doble deducción. Erró el foro apelativo al resolver como lo hizo. Veamos.

Tanto bajo el Código Federal de Rentas Internas como bajo nuestra Ley de Contribuciones de 1954, las compañías de seguro eran objeto de ajustes especiales y tributaban bajo una sección especial dentro de la propia legislación contributiva.[8] Sin embargo, la propia sección 204 y el Reglamento hacen referencia a las otras secciones de la Ley de Contribuciones de 1954 que aplicaban a las compañías aseguradoras que no fuesen de vida ni mutuas. Así mismo se ha establecido a nivel federal:

> "As to practice and procedure in the determination of tax liability, closing agreements, waivers, appeals to the Board of Tax Appeals, exemptions, assessment and collection of taxes, claims for refund, presumptions and burden of proof, suits for the recovery of overpayments, statutes of limitations, and all other matters not specifically provided for in the sections of the Code considered in this chapter, insurance companies are subject to the same provisions of the Code as corporation generally. **The sections of the Code which deal with insurance companies do not constitute a scheme or code of taxation, complete in itself without reference to the general provisions of the act.**" (citas omitidas)(énfasis nuestro)

Mertens, Law of Federal Income Taxation § 44. 14 (1942).

La sección 204 de la Ley de Contribuciones de 1954 no proveía un trato contributivo distinto para las compañías aseguradoras que no fuesen de vida ni mutuas al que les daba a las corporaciones regulares.

El objetivo de la sección 204(b) era permitir a las compañías de seguros que presentaran sus planillas conformes a los requisitos establecidos por la Convención Nacional de Comisionados de Seguros, generalmente conocida como National Association of Insurance Commissioners (NAIC).[9] La NAIC le requería

---

[8] La Sección 832 del Código de Rentas Internas Federal de 1954 es similar a la Sección 204 de la Ley de Contribuciones de 1954.

[9] Para propósitos comerciales, la NAIC requería a las compañías aseguradoras que incluyeran, como parte de su ingreso bruto, el ingreso exento. Las planillas de

a las compañías de seguros que presentaran su información financiera de una manera especial, **que iba dirigida a demostrar la solidez económica de las compañías de seguros**. Era con este objetivo que NAIC les requería que presentaran, entre otros, la totalidad de sus ingresos de inversión, independientemente que los mismos constituyesen ingreso tributable o no.[10] Así que, las compañías aseguradoras como Continental venían obligadas a incluir en el computo de su ingreso bruto los intereses que estuviesen exentos a tenor con la sección 22 (b)(4) de la Ley de Contribuciones de 1954, supra.

Ahora bien, para fines contributivos estas partidas no tributaban[11], por lo que la sección 204 (c) (6) de la Ley de Contribuciones de 1954 requería que se dedujesen de dicho ingreso bruto esos intereses exentos, de manera tal que no formaran parte del ingreso neto tributable sujeto a contribución sobre ingreso. Esta sección tenía el propósito de excluir del ingreso bruto el ingreso de intereses exentos de manera tal que no formaran parte del ingreso neto y tributable. Era la forma de mantener exento dicho ingreso que por la razón ya señalada se incluía en el ingreso bruto informado.

Los ingresos de intereses gubernamentales, a pesar de ser incluidos en el ingreso bruto de las compañías aseguradoras, no se convertían en ingreso tributable, es decir, aún cumplían con la definición de ingreso exento que

---

contribución sobre ingreso eran utilizadas y requeridas por inversionistas y acreedores para evaluar completamente el cuadro económico de las compañías.

[10] Véase sección 204 (b)(1) y Artículo 204-2 del Reglamento relativo a la Ley de Contribuciones sobre Ingreso de 1954.

[11] Estos ingresos de intereses por inversiones en obligaciones del Gobierno están exentos bajo la sección 22 (b) de la Ley de Contribuciones de 1954, supra.

disponía el Reglamento. El Artículo 24(a)-4 del Reglamento definía lo que es ingreso exento:

> (a) **Clases de ingreso exento.** (1) Tal como se usa en este artículo, el término "clase de ingreso exento" **significa cualquier clase de ingreso totalmente exento de las contribuciones impuestas por esta Ley.** Esto incluye cualquier partida o clase de ingreso constitucionalmente exento de las contribuciones impuestas por esta Ley; cualquier partida o clase, según se define más arriba, excluida del ingreso bruto por cualquier disposición de la sección 22 o de la sección 116; y cualquier partida o clase de ingreso, según más arriba se define, que las disposiciones de cualquier otra ley eximan de las contribuciones impuestas por esta Ley. Tal como se usa en este artículo, el término "ingreso tributable" significa ingreso que requiere ser incluido en el ingreso bruto; y el término "ingreso exento" significa ingreso que no requiere ser incluido en el ingreso bruto. (2) **El objeto de la sección 24 (a)(5) es agregar [sic] el ingreso exento del ingreso tributable, de modo que no pueda obtenerse una doble exención mediante la reducción de ingreso tributable por gastos y otras partidas incurridas en la producción de renglones de ingreso totalmente exentos de contribución.** Por lo tanto, **así como las partidas de ingreso exento están excluidas del cálculo de ingreso bruto según la sección 22, también la sección 24 (a)(5) excluye del cálculo de deducciones bajo la sección 23 todas las partidas que se refieren a la producción de ingreso exento, tal como se define anteriormente.** (Énfasis nuestro)

La deducción de los intereses exentos en este caso no era una erogación o gasto. Era un mero ajuste que no eliminaba la característica de exento de los intereses. Continental no podía apoyarse en que los intereses constituían una deducción propiamente, como subterfugio para sostener que tal ingreso perdía su naturaleza de exento, máxime cuando por lo dispuesto en la propia sección 204 (c) (6) este ingreso se deducía y por ende no tributaba. Tal es la única interpretación correcta de las disposiciones referidas. Antes hemos señalado que un tribunal no debe interpretar la legislación contributiva en forma extensiva, sino que debe interpretarla en forma justa a tenor con sus propios y expresos términos. Talcott Interamerican Corp. v. Registrador, 104 D.P.R. 254 (1975).

El Reglamento en su artículo 204-3, supra, establecía claramente que las deducciones a las compañías de seguros como Continental estaban sujetas a la sección 24 (a)(5). Por ello, los gastos incurridos en la producción de ingreso de intereses exentos no eran deducibles para las compañías de seguros que no fuesen de vida ni mutuas.

A lo largo de todo el proceso del caso de autos, en sus diferentes etapas, Continental ha argumentado que el caso de Allstate Fire Insurance

Co. v. Commissioner, 47 T.C. 237 (1966) apoya su posición de que no hay que hacer una atribución de los gastos al ingreso de intereses exentos de una compañía de seguros porque son deducibles del ingreso bruto. Por las razones que más adelante exponemos, el citado caso es distinguible del caso ante nos.

En Allstate Fire Insurance Co. v. Commissioner, id., el contribuyente era una compañía de seguros sujeta a tributación bajo las secciones 831 y 832 del Código de Rentas Internas Federal, semejantes a la sección 204 de la Ley de Contribuciones de 1954. La controversia en dicho caso giraba en torno a si el contribuyente podía deducir la porción de los gastos de inversión atribuibles al ingreso de intereses exentos ya que esto constituía una doble deducción de una misma partida, primero como un ajuste por ser ingreso exento, y luego como deducción de gastos ordinarios y necesarios, contrario a las disposiciones de la sección 832(e), la cual es similar a la sección 204 (e) de la Ley de Contribuciones de 1954, supra. El Tribunal de Contribuciones Federal resolvió que la compañía aseguradora podía tomar como deducción la totalidad de los gastos de inversión y que no se violaban las disposiciones de la sección 832 (e), ya que no se estaba deduciendo la misma partida dos veces. En dicho caso el Comisionado no alegaba que los gastos atribuibles a los ingresos exentos no podían ser deducidos bajo la sección 265 federal.[12] En este caso las partes estaban de acuerdo en que bajo la sección 265 la contribuyente podía tomar como deducción la totalidad de los gastos ordinarios y necesarios incurridos para generar el ingreso de intereses exentos **porque dicha sección no requería que se hiciera una atribución de esos gastos al ingreso exento**. Al respecto señaló el Tribunal de Contribuciones lo siguiente:

> Respondent [Commissioner] does not contend that the deductions here are barred by section 265 of the 1954 Code. Section 265-1 (b)(1), Income Tax Regs., provides that "class of exempt income" means only a class which is wholly excluded from gross income under any provision of subtitle A, and the dividends received from domestics corporations which are deductible under section 243 are only partially excluded (only to the extent of 85

---

[12] La sección 265 del Código de Rentas Internas Federal era similar a la sección 24(a)(5) de la Ley de Contribuciones de 1954, supra.

percent). Likewise, the Senate amendment which revised section 265 to its present form specifically protected the right to deduct ordinary and necessary business expenses incurred (as distinct from expenses for the production of income under section 212) in earning tax-exempt interest […].

A diferencia de la sección 265 del Código de Rentas Internas Federal, la sección 24 (a)(5) de la Ley de Contribuciones de 1954 y el Reglamento no permitían que las compañías aseguradoras dedujesen los gastos atribuibles a ingreso exento. Como el caso de Allstate v. Commissioner, supra, es distinguible del de autos, no nos persuade la interpretación que hace Continental de las secciones del Código Federal y que pretende que adoptemos en el caso ante nos.

Por otra parte, Hacienda alega que la deducción de los gastos de inversión relacionados con los ingresos de intereses exentos constituiría una doble deducción prohibida bajo la sección 204 (e), supra. Una deducción generalmente corresponde a un gasto que se le reconoce al contribuyente para reducir los ingresos que se han incluido en el ingreso bruto para computar el ingreso neto y tributable.[13] Como señaláramos anteriormente, la deducción que permite la sección 204 (c)(6) lo que hace es ajustar la información suministrada conforme a las reglas de la NAIC a la realidad contributiva y evitar tributar los ingresos exentos.                                                      La

---

[13] Véase sección 23 de la Ley de Contribuciones de 1954 y el Artículo 23-1 del Reglamento.

exención que el Estado provee a las corporaciones sobre los ingresos por intereses que provengan de obligaciones gubernamentales, promueve que dichas entidades inviertan en valores del gobierno. Allstate Fire Insurance Co. v. Commissioner, supra, a la pág. 242. A través de la sección 204 (c)(6), supra, se persigue el mismo propósito, pero utilizando una "deducción especial" para ajustar el ingreso bruto de las compañías aseguradoras dentro del tratamiento contributivo que se le provee a este tipo de empresa. Allstate Fire Insurance Co. v. Commissioner, supra, (Opinión Concurrente Juez Withey). En este caso no se está deduciendo realmente la misma partida dos veces del ingreso bruto. Como dijéramos anteriormente, la deducción que permite la sección 204 (c)(6) es más bien un mero ajuste y los gastos atribuibles a los ingresos exentos no pueden ser deducidos bajo la sección 204 (c)(1) como gastos ordinarios y necesarios por no estar permitido por la sección 24 (a)(5) de la Ley de Contribuciones de 1954.

Las deducciones, por ser gracias legislativas al contribuyente, deben interpretarse restrictivamente en contra de aquel que las invoca, como lo hemos hecho aquí. Véase, F.D.I.C. v. Mun. de San Juan, 134 D.P.R. 385 (1993); Central Igualdad v. Srio. de Hacienda, 83 D.P.R. 45,50 (1961); Descartes, Tes. v. Tribl. Contribuciones y Ortiz, 73 D.P.R. 491, 497 (1952).

IV

En conclusión, no procede que una compañía de seguros que no es ni de vida ni mutua, como Continental, reclame como una deducción en sus planillas de contribución sobre ingreso los gastos relacionados con sus inversiones exentas bajo la Ley de Contribuciones de 1954.[14] Por lo anterior, los reintegros de los años contributivos de 1979 y 1980 solicitados por Continental no procedían.

Por los fundamentos antes expuestos, deben revocarse las sentencias dictadas en el caso de autos por el Tribunal de Circuito de Apelaciones y el Tribunal de Primera Instancia, Sala Superior de San Juan.

Se dictará sentencia de conformidad.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

_____

[14] Actualmente, bajo el nuevo Código de Rentas Internas de 1994, según enmendado, no son deducibles los gastos atribuible a los ingresos exentos. Véase, 13 L.P.R.A. § 8597(e)(2).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Continental Insurance Company

    Demandante-Recurrida


      vs.                 CC-1999-865    Certiorari

Secretario de Hacienda

    Demandado-Peticionario


SENTENCIA


En San Juan, Puerto Rico, a 7 de mayo de 2001.


Por los fundamentos expuestos, en la Opinión que antecede, la cual se hace formar parte de la presente, se revocan las sentencias dictadas en el caso de autos por el Tribunal de Circuito de Apelaciones, Circuito Regional I – San Juan, y el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.


                           Isabel Llompart Zeno
                        Secretaria del Tribunal Supremo